IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Peggy Lee Ward, | Case No. 3:12 CV 1357 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Peggy Lee Ward timely filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction under 42 U.S.C. § 405(g).

This case was referred to Magistrate Judge Armstrong for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2(b)(2). Following briefing (Docs. 17 & 19), the Magistrate Judge recommended this Court affirm the final decision of the Commissioner to deny Plaintiff's claim for DIB (Doc. 22).

This matter is now before this Court on Plaintiff's Objection to the R&R (Doc. 23) and Defendant's Response (Doc. 24). Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) &(C), this Court has made a *de novo* determination of the Magistrate Judge's findings. For the reasons below, this Court adopts the recommendation to affirm the Commissioner's determination.

## BACKGROUND

The R&R accurately states the relevant factual and procedural background from the administrative record, which this Court adopts (Doc. 22 at 1–12). Briefly, Plaintiff was 53 years old on June 30, 2007, her date last insured ("DLI"). Plaintiff's alleged onset date is June 15, 2006. Plaintiff suffers from a myriad of health problems, but the issue which is the subject of her objection is whether the problems she had with her feet constituted a significant nonexertional limitation that required the ALJ to use a Vocational Expert ("VE") to determine disability during the relevant period (Doc. 23 at 2).

Dr. Samuel Neuschwanger, D.P.M., was Plaintiff's treating podiatrist prior to Plaintiff's DLI (AR at 696). In December 1993, Dr. Neuschwanger excised a neuroma from Plaintiff's right foot and a bunion on Plaintiff's left foot (AR at 690–93). Plaintiff also had bone removed from the left fifth metatarsal and had another neuroma excised (AR at 690–91).

In April 1994, Plaintiff complained of worsening foot pain, and Dr. James Gray, D.O., the physician treating Plaintiff in conjunction with Dr. Neuschwanger, was not sure whether the pain was similar to reflex sympathetic dystrophy ("RSDS") or fibromyalgia (AR at 680). Dr. Gray asked another doctor to evaluate Plaintiff and recommend treatment (AR at 680). In April 1995, Dr. Neuschwanger removed bone from Plaintiff's right fifth metatarsal and two neuromas from her right foot (AR at 669–72). In June 1995, Dr. Neuschwanger reported that Plaintiff still suffered chronic bilateral foot and ankle pain, so he recommended physical therapy (AR at 658). When Plaintiff was discharged from physical therapy in July 1995, she had minimal complaints of discomfort after prolonged walking and activities (AR at 653). In September 1995, Plaintiff reported to Dr. Neuschwanger that her pain was intermittent and that the orthotics had "helped a lot" (AR at 650).

However, later that month, Plaintiff told Dr. Neuschwanger she had pain in both feet and was unable to stand at work, forcing her to quit her job at a factory (AR at 649).

Plaintiff saw Dr. Neuschwanger in April 2004 for pain in her feet and heels (AR at 450). Plaintiff told Dr. Neuschwanger she had stopped wearing her orthotics since her last visit because the pain had gone away; Dr. Neuschwanger instructed Plaintiff to resume use of the orthotics (AR at 450–51). In June 2004, Plaintiff told Dr. Neuschwanger that her feet felt much better (AR at 448). Plaintiff then had the plantar aspect of her foot debrided in October 2004 (AR at 446). In May 2006, Dr. Vandehey treated a nodule on Plaintiff's toe with anti-inflammatory medicine and ice (AR at 216). Plaintiff then declined a referral to see a podiatrist (AR at 216). In December 2006, Plaintiff saw Dr. Vandehey and complained of left foot pain that bothered her when standing for long periods (AR at 211). Plaintiff said this pain was intermittent (AR at 211). In January 2007, Dr. Finerty, D.P.M., determined Plaintiff's newest foot neuroma would eventually need to be removed (AR at 241).

In September 2008, Plaintiff filed for DIB. The claim was denied initially and upon reconsideration. In April 2010, Plaintiff, represented by counsel, appeared before an administrative law judge ("ALJ"). A VE appeared at the hearing but did not testify. The ALJ found Plaintiff had residual functional capacity ("RFC") for the full range of light work and was not under a disability during the relevant period (AR at 22–29).

The Appeals Council denied Plaintiff's request for review, and she timely filed an action seeking judicial review of the Commissioner's final decision. Plaintiff's objection to the pending R&R claims the ALJ erred in using the Medical-Vocational Guidelines ("the grid") to determine disability because Plaintiff alleges she had nonexertional limitations, which precluded reliance on the grid (Doc. 23 at 2). Plaintiff contends the ALJ should have called a VE to testify.

## STANDARD OF REVIEW

In reviewing the denial of DIB, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("[R]eview of all the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings . . . are supported by substantial evidence."). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings as to any fact, if supported by substantial evidence, "shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, this Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Procedural errors, however, can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## ANALYSIS

Plaintiff contends there were nonexertional limitations, namely pain from her foot neuromas, that restricted her ability to perform a full range of light RFC, precluding the ALJ from relying soley on the grid (Doc. 23 at 9). Related to her main objection, Plaintiff also claims the ALJ should not

4

have disregarded the opinion of Dr. Neuschwanger, or at least should have clarified with Dr. Neuschwanger how Plaintiff's neuromas affected her ability to walk and stand in light of a possible diagnosis of RSDS (Doc. 23 at 6).

### NONEXERTIONAL LIMITATIONS

At the fifth stage of the disability analysis, the burden moves to the Commissioner to demonstrate that the claimant, despite her impairment, has the RFC to perform jobs within the national economy. *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). When an impairment only limits the claimant's strength, it is an exertional impairment, and the Commissioner can satisfy this burden by using the grid to determine if jobs exist in the national economy that the claimant can perform. *Id.* When an impairment restricts a claimant's ability to work, but the impairment is not a strength limitation, it is a nonexertional impairment. *Id.* When the nonexertional limitation significantly restricts the claimant's range of work, the grid may not be used. *Id.* at 926–27. Instead, a VE should be consulted. *Id.* at 927.

To establish a nonexertional limitation requiring VE testimony, "the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level." *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986). Merely possible or minor nonexertional limitations are not enough. *Id.* Only when the claimant can show a nonexertional limitation that restricts her performance of the full range of work at the assigned RFC "must [the nonexertional limitations] be taken into account and a non-guideline determination made." *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 528–29 (6th Cir. 1981).

5

In this case, the ALJ made no specific finding regarding Plaintiff's alleged nonexertional limitations; however, it is clear from the ALJ's combined findings that she found Plaintiff's alleged nonexertional limitations did not significantly restrict Plaintiff's ability to work at the light level. *See Kimbrough*, 801 F.2d at 796–97. The state medical consultant determined Plaintiff could perform medium work during the relevant period (AR at 27), and the ALJ found Plaintiff had the ability to perform the full range of light work (AR at 25). The ALJ gave Plaintiff the benefit of the doubt "in light of her occasional foot pain" (AR at 27).

The ALJ further found that although Plaintiff had some limitations in walking, standing, and lifting, there was no convincing record evidence that Plaintiff was severely limited by her foot pain during the relevant period (AR at 27). This finding was based on Plaintiff's medical records between the alleged onset date (June 15, 2006) and the date last insured (June 30, 2007), which show that Plaintiff told her family physician that her foot pain was intermittent (AR at 27). Plaintiff's physician advised her to use anti-inflammatory medication, which she agreed to do (AR at 27). Plaintiff's previous neuromas and bunions had been treated with surgery and medication (AR at 27). Plaintiff also testified that during the relevant period she cooked, cleaned, did laundry, and shopped and only needed help when her fibromyalgia acted up (AR at 26). The ALJ also found Plaintiff's statements regarding her symptoms "not entirely credible" (AR at 26). Based on the evidence, the ALJ utilized the grid to find Plaintiff not disabled during the relevant period (AR at 29).

This Court agrees that use of the grid was appropriate because Plaintiff failed to cite evidence demonstrating a nonexertional limitation that significantly impaired her ability to perform the full range of light work. Plaintiff has a history of neuromas and bunions on both feet, which were surgically treated by Dr. Neuschwanger between 1993 and 1995 (AR at 669–97). Physical therapy

6

also proved successful in decreasing Plaintiff's foot pain (AR at 653). Plaintiff did not see Dr. Neuschwanger between 1996 and April 2004, at which time she returned with bilateral heel pain and a lesion on her right foot (AR at 450). Plaintiff told Dr. Neuschwanger that her foot pain had disappeared with the use of orthotics, so she had discontinued their use (AR at 450). Dr. Neuschwanger debrided Plaintiff's lesion and instructed her to wear orthotics for her heel pain (AR at 451). By June 2004, Plaintiff reported that her feet felt much better (AR at 448). When Plaintiff saw her family physician in May 2006, she had a nodule on her right fifth metatarsal but declined a referral to a podiatrist (AR at 216).

For the period between Plaintiff's alleged onset date and DLI, there is little evidence of impairment due to foot pain. In December 2006, Plaintiff told her family physician that she was having pain in her left foot that "really" bothered her after standing for long periods of time, but did not bother her other days, so her doctor suggested anti-inflammatory medication (AR at 211). In January 2007, Plaintiff saw Dr. Finerty for the pain in her left foot, and Dr. Finerty diagnosed a neuroma that might eventually need to be removed (AR at 241). Plaintiff again reported that her pain was serious some days and not much of a bother other days (AR at 241).

The above medical evidence, combined with Plaintiff's testimony that she could perform household chores without help unless her fibromyalgia was acting up (AR 49–51), leads this Court to conclude there is substantial evidence to support the ALJ's conclusion that Plaintiff had no significant limitations in her ability to perform the full range of light work. Therefore, use of the grid was appropriate.

7

### **RECONTACTING DR. NEUSCHWANGER**

Plaintiff further claims the ALJ should not have disregarded the opinion of Dr. Neuschwanger or should have clarified with Dr. Neuschwanger how Plaintiff's neuromas affected her ability to walk and stand (Doc. 23 at 6). Plaintiff contends that, because Dr. Gray suggested Plaintiff's pain in 2004 may have been caused by RSDS, the Social Security Ruling ("SSR") regarding RSDS governs (Doc. 23 at 5). Plaintiff also claims there is a sufficient basis for Dr. Neuschwanger to conclude that Plaintiff has RSDS (Doc. 23 at 6). SSR 03–2p provides that RSDS is "a chronic pain syndrome" and "may be the basis for a finding of 'disability.'" When RSDS is alleged, the case is analyzed using the same sequential evaluation as any other impairment, and pain, an anticipated symptom of RSDS, should also be evaluated as it normally would. *Id.* The ALJ is required to recontact the treating physician only if she finds the evidence is inadequate to determine the existence of a disability. *Id.*

While Plaintiff may exhibit one or more possible symptoms of RSDS, neither Dr. Neuschwanger nor Dr. Gray ever diagnosed Plaintiff as having RSDS; Dr. Gray only suggested it once as a possibility (AR at 680). Furthermore, Plaintiff did not allege RSDS as a source of disability when she filed for benefits. Plaintiff did allege pain from the problems with her feet as a source of disability, and, as already discussed, this pain was evaluated by the ALJ as part of Plaintiff's disability determination and found to be a limitation that did not rise to the level of a nonexertional limitation (AR at 27). Therefore, this Court finds the ALJ did not need to recontact Dr. Neuschwanger for further explanation.

## CONCLUSION

The ALJ considered the medical evidence, Plaintiff's statements, and the opinions of two separate doctors to determine Plaintiff could perform a full range of light work.  Plaintiff cites no evidence of a doctor limiting her time sitting, standing, or walking, and Plaintiff is on record describing her pain as intermittent and controlled by medication or other treatment.  Plaintiff's Objection (Doc. 23) is rejected, and this Court adopts the R&R (Doc. 22).  The claim for benefits is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

June 14, 2013